**GEORGIA STUDENT FINANCE COMMISSION, et al., Plaintiffs,**

v.

**Lauro F. CAVAZOS, in his official capacity as Secretary of Education, et al., Defendants.**

Civ. A. No. 1:89–cv–160–MHS.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 8, 1991.

Patricia T. Barmeyer, William Bradley Hill, Jr., Office of State Atty. Gen., Nancy M. Gallagher, Office of Georgia Secretary of State, Atlanta, Ga., Leigh M. Manasevit, pro hac vice, Brustein & Manasevit, Washington, D.C., for plaintiffs.

Amy Berne Kaminshine, Office of U.S. Atty., N.D. Ga., Atlanta, Ga., Neil H. Koslowe, pro hac vice, U.S. Dept. of Justice, Civ. Div., Stephen Y. Winnick, Harold Jenkins, Brian Siegel, pro hac vice, U.S. Dept. of Educ., Washington, D.C., for defendants.

## ORDER

SHOOB, District Judge.

By order dated July 10, 1990, 741 F.Supp. 899, the Court granted summary judgment in favor of defendants on the constitutional issues in this case. The Court must now determine the propriety of plaintiffs' remaining claims. For the reasons stated below, the Court will grant defendants' motion for summary judgment on the remaining issues and will deny plaintiffs' motion for summary judgment on the same.

## I. *Facts*

The factual background of this case has been outlined by the Court repeatedly during the course of this litigation. *See* Court's order denying plaintiffs' motion for a preliminary injunction dated April 7, 1989; Court's order on constitutional issues dated July 10, 1990. Therefore, the Court will briefly summarize the facts relevant to the resolution of the remaining issues.

Under the Guaranteed Student Loan Program ("GSL") created by the Higher Education Assistance Act of 1965, 20 U.S.C. § 1071 *et seq.* (the "Act"), the Secretary of Education (the "Secretary") subsidizes a portion of the interest on private loans to post-secondary students which are guaranteed against default by state or nonprofit private agencies operating a loan insurance program that meets federal standards. The Act authorizes the Secretary to enter into reinsurance agreements with the guaranty agencies providing that the Secretary will reimburse between 80% and 100% of the agency's eligible guaranty claims payments to lenders, in return for the agency's promise to satisfy GSL requirements and to comply with "all changes in the Act or Regulations in accordance with their effective dates." *See* 34 C.F.R. § 682.400(d) (1989).

Plaintiffs filed this declaratory judgment action challenging the constitutionality of the 1987 Amendments to the Higher Education Act of 1965 (the "Amendments") which require the transfer of excess reserves held by participating GSL guarantors to the United States Department of Education ("DOE"). Under the Act, guaranty agencies are required to deposit and maintain in a reserve fund all cash and other receipts. 34 C.F.R. § 682.410(a)(2)–(6) (1989). The Amendments set forth a statutory formula for determining the maximum amount each guaranty agency is allowed to have in its reserve fund. *See* 20 U.S.C. § 1072(e) (1988). Agencies with excess reserves are directed to transfer the excess reserves to the Secretary (the "transfer requirement") unless eligible for a waiver pursuant to 20 U.S.C. § 1072(e)(3).[1] The Court previously determined that the Amendments were constitutional and now must address whether

---

1. A guaranty agency is not required to turn over excess reserves (1) if the agency's financial status has deteriorated since the end of the preceding fiscal year; (2) if, due to a significant change in the economy or loan insurance program, the payment of funds would cripple the agency; or (3) if the reduction in reserves would compel the agency to violate a contractual obligation to maintain a certain level of reserve funds. 20 U.S.C. § 1072(e)(3)(A)(i)–(iii).

the Secretary improperly denied plaintiffs' request for a waiver.

Plaintiff Georgia Higher Education Assistance Corporation ("GHEAC"), a guaranty agency created by the State of Georgia, is a member of the GSL program and maintains reinsurance agreements with the DOE. After enactment of the Amendments, the Secretary determined that GHEAC had a maximum cash reserve level of $3,109,452.00, actual reserves of $15,003,447.00, and excess reserves of $11,893,995.00. On February 16, 1988, the DOE informed GHEAC that it must transfer $10,113,764.00 of its excess reserves to the DOE as required by § 1072.

In response, GHEAC requested a waiver of the transfer requirement on the grounds that changes in GHEAC's program would render maximum cash reserves after the transfer inadequate for continued functioning. *See* 20 U.S.C. § 1072(e)(3)(A)(ii). After an oral presentation by GHEAC, the DOE communicated its decision that GHEAC had not satisfied the statutory requirements for a waiver.

> Your agency failed to demonstrate that it experienced a significant change in economic circumstances. In fact, your agency did not present any evidence of a significant change in economic circumstances to the Department and, during the oral presentation, you indicated that your agency would continue to function after the excess cash reserves were eliminated. Your agency's only arguments questioned the validity of section [1072(3)] and were outside the scope of the waiver process.

Letter from Deputy Assistant Secretary for Student Financial Assistance Dewey L. Newman, dated September 26, 1988.

On November 3, 1988, GHEAC requested that the DOE reconsider the waiver request on the grounds that "in eliminating its excess cash reserves, the agency would be compelled to violate contractual obligations existing on December 22, 1987, that require the agency to maintain a specified level of reserve funds." *See* 20 U.S.C. § 1072(e)(3)(A)(iii). Representatives of GHEAC and the DOE met to discuss the new waiver request and by letter dated December 5, 1988, GHEA outlined its new grounds for waiver. GHEAC argued that the DOE's enforcement of the transfer requirement would make it impossible to comply with the 10% reserve requirement contained in its contracts with student loan lending institutions and urged the DOE to waive the transfer requirement.[2]

After considering additional information submitted by GHEAC, the DOE informed the agency that it would not reopen the waiver decision because "GHEAC does not currently satisfy, and probably never has satisfied, the 10 percent requirements in its contracts. Thus, recovery of excess cash reserves could not compel GHEAC to violate the requirement. Moreover, GHEAC has not presented any evidence to show the lender has enforced the reserve requirement." Letter from Assistant Secretary Kenneth D. Whitehead, dated March 22, 1989.

## II. *Discussion*

Plaintiffs claim the DOE's denial of the waiver request was arbitrary and capricious in violation of the Administrative Procedures Act ("APA"). 5 U.S.C. § 706(2)(a). In addition, plaintiffs claim the denial was invalid because it was made by an unauthorized official and because a hearing on the record was not conducted pursuant to 20 U.S.C. § 1082(a)(3). Finally, plaintiffs dispute defendants' calculation of plaintiffs' excess cash reserves.

### A. APA

■ The APA requires the Court to set aside agency rules if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a) (1988). Judicial review of an administrative action should be conducted with a presumption of administrative regularity and with deference to the agency

---

**2.** GHEAC's standard contract with lenders requires it to "maintain a reserve in an amount equal to at least ten percent (10%) of the unpaid principal of all outstanding notes guaranteed by GHEAC."

action. *Organized Fishermen of Florida v. Hodel,* 775 F.2d 1544, 1549–50 (11th Cir. 1985), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986). It is not necessary that the Court conclude that the Secretary's decision was legally correct, only that it was not made arbitrarily and capriciously.

■ The agency's actions, however, are not reviewed without some degree of scrutiny.

> Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, [the Court] must "consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicles Mfrs. Assoc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Plaintiffs contend that the DOE failed to consider relevant factors in reaching its decision and insist that the denial of its waiver application constituted a clear error of judgment.[3] Defendants argue that the denial of the waiver application came after consideration of all the relevant factors. The Court agrees and finds that the decision was consistent with the evidence before the DOE.

■ After review of the evidence, the DOE found that GHEAC would not be compelled to violate any agreements by complying with the transfer requirement be- cause all the agreements between the agency and its lenders had been mutually suspended with regard to the 10% reserve requirement. The DOE found that the parties entered into new "quasi agreements" in which all terms of the original contracts except the 10% reserve requirement were in effect. While the lenders could have enforced the reserve requirement even after the mutual departure, GHEAC never showed that any lender had provided the necessary notice. *See* O.C.G.A. § 13-4-4 (1982) (reasonable notice must be given of the intent to rely on the exact terms of the agreement following mutual departure from the contract). The Secretary determined that under Georgia law, GHEAC was under no legal obligation to maintain reserves equal to 10% of the unpaid principal of all outstanding loans at the time it was required to transfer excess cash reserves to the Secretary and was, therefore, not entitled to a waiver of the transfer requirement.

Plaintiffs do not dispute the DOE's finding that GHEAC and the lenders with which it had contracts mutually departed from the written agreement terms requiring GHEAC to maintain a 10% reserve. In fact, GHEAC's executive director openly acknowledged at the oral presentation on GHEAC's waiver application that GHEAC has never complied with the contract term at issue. In addition, GHEAC informed the DOE that First Wachovia Corporation, one of its largest lenders, had been aware for years that GHEAC's reserve was not at the specified level. While H. Jack Runnion, Jr., Senior Executive Vice President and Chief Financial Officer of Wachovia Bank and Trust Corporation, claims in his affidavit attached to plaintiff's brief on the remaining issues that Wachovia "is comfortable doing business with [GHEAC] in part based upon the size of their reserve fund," the fund is, and always has been, maintained at a level below the contractual 10%

---

**3.** GHEAC does not dispute the Secretary's findings on its request for waiver under category (3)(A)(ii) of § 1072(e). Instead, GHEAC argues that the DOE acted arbitrarily and capriciously in denying its request for reconsideration under category (3)(A)(iii). Accordingly, the Court's discussion will focus solely on GHEAC's second grounds for waiver.

reserve requirement.[4]

The Court finds DOE's decision was reasoned and consistent with the evidence. Plaintiffs did not submit any evidence that if required to satisfy the transfer requirement, GHEAC would be *compelled* to violate its contracts with lenders. To the contrary, the DOE considered all important aspects of the issue and offered a reasoned explanation for its decision.[5] While the denial of the waiver application was not in GHEAC's best interest, the Court cannot conclude that it was arbitrary. Accordingly, the Court will grant defendants' motion for summary judgment on the arbitrary and capricious claim.

### B. Unauthorized Action and Prior Hearing

■ Plaintiffs claim that neither the Deputy Assistant Secretary nor the Acting Assistant Secretary possessed the statutory authority to deny GHEAC's waiver application. The exact language of § 1072(e) provides that the Secretary will make determinations concerning applications for waiver. Plaintiff insists that only certain enumerated functions may be delegated by the Secretary, and then, only to the Regional offices of the DOE. Plaintiff claims that the waiver determination is not among the delegable functions and even if it were, the Deputy Assistant or Acting Assistant could not make the determination.

Plaintiffs' analysis not only would lead to absurd results in the daily operations of executive agencies, but is an incorrect interpretation of the law. 20 U.S.C. § 3472 empowers the Secretary to delegate any function to officers and employees of the DOE as may be necessary. The Code section cited by plaintiff merely *limits* those duties under the Higher Education Assistance Act which can be delegated *to Regional offices*. Therefore, the Court finds that the Secretary properly delegated to subordinate officials the responsibility of passing on waiver requests.

■ Plaintiff also alleges that the denial was improper because GHEAC was not provided a hearing on the record as required by 20 U.S.C. § 1082(a)(3). Under this Code section, the Secretary may modify the terms and conditions of federal loan insurance contracts after notice and an opportunity for a hearing on the record if the Secretary finds the modification necessary to protect the United States from the risk of unreasonable loss. Plaintiffs argue that the Secretary modified its reinsurance agreements with GHEAC by seeking to enforce the transfer requirement and insist that the agency was entitled to a hearing on the record.

Plaintiffs' reliance on § 1082(a)(3) is misplaced; the Secretary did not choose to modify its contracts with GHEAC, Congress made that decision and enacted the Amendments. In addition, even though not required, the DOE offered GHEAC the op-

---

4. Mr. Runnion also indicates that should GHEAC be required to transfer the excess reserves to the DOE that Wachovia "would have substantial concern about its existing loans in Georgia and about originating new guaranteed loans in Georgia. Indeed, Wachovia and First Atlanta would consider restricting the volume of their business to existing loans." Runnion affidavit at 3. However, GHEAC presented no evidence that its lenders would consider it a violation of the lending agreement if GHEAC were required to transfer the excess reserves. Indeed, GHEAC failed to respond to the Secretary's specific request for documentation that lenders had notified GHEAC that they intended to enforce the 10% reserve requirement. *See* Letter from Assistant Secretary Kenneth D. Whitehead dated January 25, 1989.

5. Plaintiffs urge the Court to follow *Rhode Island Higher Education Assistance Authority v.*

*Cavazos,* 749 F.Supp. 414 (D.R.I.1990), in finding the denial of waiver arbitrary and capricious. The Rhode Island case is similar to the instant action insofar as the Rhode Island agency consistently maintained reserves below some of its stated contractual reserve requirements. However, other contracts between the agency and its lenders contained a lower reserve requirement that the agency had demonstrated it was capable of fulfilling. The Secretary failed to provide an explanation of why a waiver was not granted to prevent the agency's reserve from falling below the lower requirement. The Court found that denial of the waiver requirement would compel the Rhode Island agency to violate its lower reserve requirement. GHEAC has presented no evidence of varying contractual reserve requirements similar to the Rhode Island case.

portunity of presenting an oral presentation and allowed numerous submissions from the agency on the question of waiver. The Court finds that GHEAC was afforded sufficient procedural protections by the Secretary.

C. Calculation of Excess Reserves

Finally, plaintiffs argue that defendants have erroneously calculated "excess cash reserves" in violation of the Act. Under the legislation, the Secretary is directed to recover "excess cash reserves" which are defined as "the agency's cumulative cash receipts less the agency's cumulative cash disbursements." 20 U.S.C. § 1072(e)(5)(A). "Cumulative cash receipts" are defined as including "insurance premiums, Federal reinsurance premiums, and collections on defaulted loans." 20 U.S.C. § 1072(e)(5)(C). Plaintiffs claim defendants erred in including within the scope of cumulative cash receipts, investment earnings on reserve funds, State appropriations, and other sources of funds.

Section 1072(e)(5)(C), however, is not an exclusive inventory of items for calculation. By its clear language, the Code section is merely a list of *some* of the items included in the calculation. The Secretary determined that other cash receipts may be included in the calculation of excess reserves. Accordingly, the Court finds the interpretation reasonable and will defer to the Secretary's construction. *See Japan Whaling Assoc. v. American Cetacean Soc.*, 478 U.S. 221, 233, 106 S.Ct. 2860, 2867, 92 L.Ed.2d 166 (1986).

III. *Conclusion*

For the reasons stated above, the Court DENIES plaintiffs' motion for summary judgment on the remaining issues and GRANTS defendants' motion for summary judgment on the same. The Court also DENIES plaintiffs' request for reconsideration of its ruling on the constitutional claims.

IT IS SO ORDERED.